## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

JORGE DENIS,

                                 Petitioner,

       v.

                                          9:12-CV-1562

DAVID M. UNGER, Superintendent              (DNH/ATB)

                           Respondent.

JORGE DENIS, Petitioner, pro se
LISA E. FLEISCHMANN, AAG, for the Respondent

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

### REPORT-RECOMMENDATION

       This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable David N. Hurd, United States District Judge.

       Presently before this court is a petition, seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. (Petition ("Pet.")) (Dkt. No. 1). Petitioner brings this action, challenging a judgment of conviction rendered on September 30, 2004, after a jury trial in the Oswego County Court. Petitioner was convicted of Criminal Sale of a Controlled Substance, First Degree and ultimately sentenced to a determinate sentence of 15 years incarceration with 5 years post release supervision.[1]

       Petitioner filed an appeal with the Appellate Division, but prior to the court's decision on that appeal, petitioner filed a motion to vacate his conviction pursuant to

---

[1] This is the ultimate sentence that the petitioner received. He was originally sentenced to 18 years to life imprisonment, but was re-sentenced to the 15 year term on May 9, 2008 pursuant to the Drug Law Reform Act. *See* N.Y. Crim. Proc. §§ 440.46, 70.70, 70.71.

N.Y. Crim. Proc. Law § 440.10, which was denied by the trial court on May 13, 2005. (Dkt. No. 7-3, Resp't's Ex. C). Petitioner's conviction was affirmed by the Appellate Division, Fourth Department on January 31, 2012, and the New York Court of Appeals denied leave to appeal on June 14, 2012. *People v. Denis*, 91 A.D.3d 1301, (4th Dep't), *lv. denied*, 19 N.Y.3d 959 (2012).

Petitioner raises the following claims for this court's review:

1. His arrest was illegal under *Payton v. New York*, 445 U.S. 573 (1980), and therefore his statements should have been suppressed.

2. The prosecution failed to prove petitioner's guilt beyond a reasonable doubt.

3. The prosecutor engaged in misconduct.

4. Petitioner was denied effective assistance of counsel.

(Pet. at 6-12). Respondent has filed a memorandum of law in opposition to the petition, together with the pertinent state court records. (Dkt. Nos. 7, 8). For the following reasons, this court agrees with respondent and will recommend dismissal of the petition.

## DISCUSSION

### I.  Relevant Facts

Petitioner's conviction resulted from an investigation in late 1998 and early 1999 by state and local authorities into the drug trade in and around Oswego County. The investigation was being led by New York State Police Investigator William LeFort ("LeFort") and Investigator Michael Anderson ("Anderson"). (Record on

Appeal[2] "RA" at 846-48 – LeFort, 817-18 – Anderson, Dkt. No. 7-13).[3] The two

targets of the investigation were petitioner and Randy Banks ("Banks"). (*Id.*) Banks

testified at petitioner's trial in exchange for a very favorable plea bargain.[4] At trial,

Banks testified that he began using cocaine in 1995 and began purchasing cocaine

from petitioner in 1997, visiting him "[a]t least a couple hundred times" at petitioner's

home at 107 Johnson Road in Hastings, New York. (RA at 614-18, 624, Dkt. No. 7-

12). Banks testified that he had also been to see the petitioner twice at 107

Willoughby Place, an address in Syracuse, New York. (RA at 623-24). Banks stated

that his cocaine use escalated, and he began to purchase larger quantities for friends

who asked him to get cocaine for them. (RA at 626). He would offer to take "a

quantity" and pay for it when he returned. (RA at 626-27).

On March 16, 1999, one of Bank's friends, who also happened to be a

confidential informant ("CI"), asked Banks to obtain four ounces of cocaine for him.

(RA at 629). Banks testified that after he left the CI, he drove his van to the

petitioner's home at 107 Johnson Road. (RA at 631). When Banks arrived at

---

[2] Respondent has filed two volumes of trial transcripts (Dkt. Nos. 7-12 and 7-13). The transcript pages are numbered at the top right hand corner, but they are also numbered as the Record on Appeal at the bottom center of the page. The court will cite to the transcript pages by the "Record on Appeal" page citation.

[3] Other officers who were involved in the operation and testified at trial were: New York State Trooper Richard Searing ("Searing") (RA at 709-58); Fulton Police Sergeant Jeffrey Kinney ("Kinney") (RA at 763-76); and New York State Police Investigator Keith Fox ("Fox") (RA at 776-91).

[4] Banks pled guilty to a class D felony in exchange for Drug Treatment Court, and his agreement to testify against petitioner. (RA at 672-73 – Banks). Banks successfully completed his drug program, his felony plea was vacated, and the charge was reduced to a class A misdemeanor, to which he pled guilty. (RA at 674). He was placed on probation as a result. (*Id.*)

petitioner's home, he asked petitioner about obtaining the four ounces of cocaine. The petitioner told Banks that he did not have that amount at home, "but he could probably get it." (RA at 634). At that time, the petitioner told Banks that he would be back at home by 7:00 p.m. so that Banks could come back to pick up the drugs. (RA at 635).

When Banks returned to petitioner's home that evening at approximately 7:00 to 7:15 p.m., he knocked on the door, but no one was home. Banks returned to his van and paged petitioner. (RA at 636-37). Banks did not get an answer from petitioner until he attempted to page him a second time. (RA 637-38). Petitioner called Banks on his cellular telephone and told Banks that he was "stuck" in Syracuse, but that Banks could come to his apartment at 107 Willoughby Place in Syracuse to pick up the cocaine. (RA at 639). Banks drove to Syracuse and pulled into the parking area near petitioner's apartment. (RA at 648-49). LeFort and the surveillance team followed Banks to Syracuse, but only LeFort followed Banks to Willoughby Place. (RA at 859 –LeFort) (Dkt. No. 7-13).[5]

As Banks was about to get out of the van, he saw petitioner approaching, so he stayed in the van. (RA at 649). They had a conversation at the door of the van, and petitioner handed Banks what looked like some paper towels. (RA at 650-51). Banks unwrapped the paper towels, confirmed that the cocaine was inside, and then discussed payment with petitioner. (RA at 651). Petitioner told Banks that he could return to petitioner's 107 Johnson Road home in the morning with the money. (RA at 652). Banks testified specifically that he went to Willoughby Place to get cocaine and

---

[5] Docket number 7-13 begins at page 700 of the Record on Appeal.

4

that he received cocaine from petitioner. (RA at 652). LeFort testified that the person who he saw speaking with Banks was the petitioner. (RA at 866).

When Banks left petitioner and started driving back to Oswego County, he telephoned the CI, told him he had the cocaine and arranged for a meeting in Central Square. (RA at 653). However, Banks had some extra time and decided to stop at Kmart in Northern Lights. (RA at 653-54). Before he got out of the van, he put the cocaine in a box on a shelf in the back of the van. (RA at 656). The surveillance team followed Banks to the Kmart and observed his actions as he "did" something in the back of the van before he went into the Kmart. (RA at 721-23 – Searing, 869 – LeFort).

When Banks was finished shopping, he left the Kmart parking lot and drove back to Oswego County. (RA at 723-24 – Searing). Banks was stopped by the officers after he crossed into Oswego County. (RA at 725-26 – Searing, 824 – Anderson, 869-70 – LeFort). Banks was later taken into custody, he and the van were searched, and the drugs recovered.[6] (RA at 657 – Banks). LeFort interviewed Banks, and the next morning, the officers executed a search warrant for petitioner's house on Johnson Road. (RA at 873-74 – LeFort). When they executed the warrant, they found a piece of cardboard which read "telefono Randi 263-6101." (RA at 873-76 – LeFort).

The officers also obtained a warrant for the search of petitioner's Willoughby

---

[6] A small amount of cocaine was recovered on Randy Banks's person, while the cocaine found in the box on a cargo shelf in the van weighed 3.88 ounces. (RA at 843). The parties stipulated to the weight of the cocaine found in the van. (*Id.*) This amount was extremely close to the four ounces requested by the CI.

Place apartment in Syracuse. When they entered the apartment, they asked a woman where petitioner was, and she pointed to a bathroom door that was locked. The officers forced open the door, found petitioner in the bathroom and heard the toilet running. Petitioner was handcuffed, and in his wallet, LeFort found $854.00 and a slip of paper that said "Randy" on one side and had a cellular telephone number on the other side. The officers also recovered $7,000.00 in $100.00 bills from a drawer.

In the kitchen of the apartment, petitioner was informed of his *Miranda* rights, and petitioner stated that he understood and waived those rights. (RA at 880-81). Petitioner was brought to the Hastings Barracks. (RA at 773 – Kinney). After reminding petitioner of his *Miranda* rights, LeFort told petitioner that he saw him speaking with Banks the night before, that Banks was cooperating with the police, he knew that Banks owed petitioner $4000.00, and that he was "facing prison." (RA at 882-83 – LeFort). Petitioner responded that he did not want to go to jail, and that he would be willing to cooperate by "do[ing] four people for a kilo in Syracuse."[7] (RA at 884-85 – LeFort).

Petitioner did not present any witnesses at trial.

## II.   Generally Applicable Law

### A.   The AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

---

[7] Petitioner was arraigned on the charges on September 17, 1999 and posted bail. He failed to come to court on October 20, 1999, and the court signed a bench warrant for his arrest. Petitioner did not appear in court again until March 2004. (RA at 845-46). The parties stipulated to those facts as they would have been testified to by the Chief Clerk of Oswego County.

6

provides that, when a state court has adjudicated the merits of a petitioner's claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008).[8] This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, __ U.S. __ , 131 S. Ct. 1388, 1398 (2011) (citations omitted).

Under section 2254(d)(1), a state-court decision is contrary to clearly established Supreme Court precedent if its "conclusion on a question of law is 'opposite' to that of the Supreme Court or if the state court decides a case differently than the Supreme Court's decision 'on a set of materially indistinguishable facts.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case. *See*

---

[8] Prior to the AEDPA, the court was not required to defer to state court determinations on pure questions of law and mixed questions of law and fact. *Thompson v. Keohane*, 516 U.S. 99, 107-113 (1995). When presented with these questions, the court was empowered to conduct an independent review of the record. *Id.*

*Williams*, 529 U.S. at 413; *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000).

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo*. *Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).

### B.     Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

"A habeas petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.'" *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007)

(quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir.1982)).

## C. Procedural Bar

A federal judge may not issue a writ of habeas corpus if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977). A federal habeas court generally will not consider a federal issue if the last state court decision to address the issue "'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis added). This rule applies whether the independent state law ground is substantive or procedural. *Id*.

There are certain situations in which the state law ground will not be considered "adequate": (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); (2) where the state procedural rule was not "'firmly established and regularly followed,'" *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *James v. Kentucky*, 466 U.S. 341, 348-349 (1984); and (3) where the prisoner had "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so, *Wainwright v. Sykes*, 433 U.S. at 87. In *Garvey v. Duncan*, the Second Circuit stated that, in certain limited circumstances, even firmly established and regularly followed rules will not prevent federal habeas review if the application of that rule in a particular case would be considered "exorbitant." *Garvey v. Duncan*, 485 F.3d at 713-14 (quoting *Lee v.*

9

*Kemna*, 534 U.S. at 376).

      A state prisoner who has procedurally defaulted on a federal claim in state court may only obtain federal habeas review of that claim if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that he is "actually innocent." *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). "Cause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999).

      To demonstrate "actual innocence," a habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted him, but for the alleged constitutional violation. *Murden v. Artuz*, 497 F.3d 178, 194 (2d Cir. 2007), *cert. denied sub nom*. *Murden v. Ercole*, 552 U.S. 1150 (2008); *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "Actual innocence" requires factual innocence, not "legal" innocence. *Murden v. Artuz*, 497 F.3d at 194. A claim of actual innocence requires petitioner to put forth new, reliable evidence that was not presented at trial. *Cabezudo v. Fischer*, 05-CV-3168, 2009 WL 4723743, at *13 (E.D.N.Y. Dec. 1, 2009) (citing *Lucidore v. N.Y.S. Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000)); *Schlup v. Delo*, 513 U.S. at 316, 327-328.

### III. Petitioner's Statements (Ground 1)

#### A. Legal Standards

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a petitioner may not challenge an allegedly unconstitutional search and seizure in an application for federal habeas relief. *Id.* at 481–82; *see also Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). The Second Circuit has determined that review of a Fourth Amendment claim in a habeas corpus application is proper only if: (1) the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (2) the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in that process. *See Capellan*, 975 F.2d at 70; *Gates v. Henderson*, 568 F.2d 830, 839–40 (2d Cir. 1977). New York provides an approved mechanism for litigating Fourth Amendment claims. *See Capellan*, 975 F.2d at 70 (citing N.Y. Crim. Proc. § 710.10 et seq.); *Blake v. Martuscello*, No. 10-CV-2570, 2013 WL 3456958, at *5 (E.D.N.Y. July 8, 2013) (citing N.Y. Crim. Proc. Law § 710.10 and finding that the Second Circuit has explicitly approved New York's procedure for litigating Fourth Amendment claims) (citing *inter alia Capellan*, 975 F.2d at 70 n.1) (other citations omitted)).

#### B. Application

In this case, petitioner was arrested in his home. He claims that because the officers did not have an arrest warrant, the arrest was in violation of *Payton v. New*

*York*,[9] and therefore, any statements that he made to the investigator at the police barracks should have been suppressed.

*Stone v. Powell* applies to habeas review of claims made under *Payton*. *Benton v. Brown*, 537 F. Supp. 2d 584, 590-91 (S.D.N.Y. 2008) (citing *inter alia Leake v. Senkowski*, No. 01 Civ. 7559, 2004 WL 1464889, at *18 (S.D.N.Y. June 30, 2004) (collecting cases)).  In this case, prior to trial, the court held a hearing pursuant to *People v. Huntley*, 15 N.Y.2d 72 (1965), in order to address whether the petitioner's statements were admissible. (Dkt. No. 7-12, CM/ECF pp. 5-138).  The court allowed further briefing on the issue, and the trial court issued a written decision on the motion. (Dkt. No. 7-8, CM/ECF pp.126-36).  Petitioner had a full and fair opportunity to litigate the issue, and he lost at the trial level and at the appellate level.  The trial court conducted a full hearing and issued a lengthy written opinion.  The Appellate Division considered the issue on the merits.

Petitioner does not challenge the procedures used by the trial court, nor does he claim that he was precluded from utilizing those procedures due to an unconscionable breakdown in the system.  He simply reasserts the same claim that he asserted during his suppression hearing and on appeal from his conviction.  Because petitioner had a full and fair opportunity to litigate the issue in New York State court, the claim is not cognizable on habeas review.  This court may not address the merits of the claim and will recommend dismissal of petitioner's first ground pursuant to *Stone v. Powell*,

---

[9] In *Payton*, the Supreme Court held that the Fourth Amendment, made applicable to the states by the Fourteenth Amendment, prohibits police from making a warrantless and nonconsentual entry into a suspects home in order to make a routine felony arrest. 445 U.S. at 576.

*supra.*

## IV.  <u>Sufficiency of Evidence (Ground 2)</u>

### A.  **Exhaustion**

On appeal to the Appellate Division, petitioner argued that the evidence was insufficient to convict him, arguing both New York State Law and the federal constitutional grounds.[10] (Dkt. No. 7-7, Resp't's Ex. G, Pet.'s Br. at 14-18).  The Appellate Division considered, and rejected, the issue on the merits. *People v. Denis, supra.*  However, in his application for leave to appeal to the New York Court of Appeals, petitioner's counsel specifically omitted the sufficiency ground. (*See* Dkt. No. 7-11, Resp't's Ex. K, Application for Leave to App. at ¶ 7).  Appellate counsel stated that "[t]he case below presented four questions to the Appellate Division.  One had to do with [sic] question of fact, *the other three present questions of law to be considered by this Court.*" (*Id.*)  Counsel then stated that his first ground was the *Payton* violation; the second ground was the prosecutor's misconduct at trial; and the third was defense counsel's alleged ineffectiveness for his failure to proceed with the mistrial offered by the trial court. (*Id.*)  The subsequent paragraph entitled: "Why Leave Should be Granted," contains further argument relating only to the three grounds, mentioned in the previous paragraph. (*Id.* ¶ 8).

Because a petitioner must present his federal constitutional claim to the highest court available for review, his *conscious omission* of one of the grounds that he raised

---

[10] The point heading reads as follows: "THE CASE AGAINST APPELLANT WAS INSUFFICIENT AND THE JUDGMENT AND VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE."

in the Appellate Division renders that ground unexhausted. *See Galdamez v. Keane*, 394 F.3d 68, 74-77 (2d Cir. 2005) (discussing the limited circumstances in which the Court of Appeals would construe a petitioner's leave application as abandoning claims that he raised in the Appellate Division, including a situation in which the petitioner attached his Appellate Division brief raising three claims, but a letter to the Court of Appeals requesting only review of one claim); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991); *Spikes v. Graham*, No. 9:07-CV-1129, 2010 WL 400504, at *8 (N.D.N.Y. July 14, 2010) (citing *Grey, supra*), *adopted*, (N.D.N.Y. Oct. 12, 2010); *Oquendo v. Senkowski*, 452 F. Supp. 2d 359, 367 (S.D.N.Y. 2006) (when petitioner's appeal application mentions some of his claims, while his Appellate Division brief details others, the claims not mentioned in the letter-application are not fairly presented). Thus, petitioner's sufficiency claim is not exhausted.

**B.    Procedural Default**

Although petitioner's sufficiency argument is unexhausted, he no longer has any remedy available in New York State courts to consider his claim. He cannot return to the Court of Appeals because New York permits only one application for direct review. *Oquendo*, 452 F. Supp. 2d at 368 (citing *Spence v. Superintendent*, 219 F.3d 162, 169-70 (2d Cir. 2000); *Grey*, 933 F.2d at 120); N.Y. Rules of Court, Court of Appeals § 500.20. He cannot file a motion to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10 because New York State law prohibits collateral review when the Appellate Division has dismissed a claim on the merits. *Id.* (citing N.Y. Crim. Proc. Law § 440.10(2)(a)). Thus, petitioner's sufficiency claim is barred by a

procedural default. Petitioner has not shown any "cause" for the failure to raise his claim in the New York Court of Appeals.[11] Because there is no cause, the court need not address prejudice.[12]

## V. Prosecutorial Misconduct/Ineffective Counsel (Grounds 3 & 4)

This court will consider petitioner's last two issues together because they are intertwined. Petitioner raised prosecutorial misconduct in the Appellate Division. However, the court held that petitioner waived consideration of the issue because his trial attorney failed to move for a mistrial or accept the trial judge's offer to declare a mistrial. The Appellate Division considered the ineffective assistance of counsel claim and rejected it on the merits, finding that petitioner failed to demonstrate the absence of a strategic or other legitimate explanation for defense counsel's choice in

---

[11] Although petitioner has made no such argument, the court would note that in certain circumstances, cause may be shown if counsel was ineffective. *Murray v. Carrier*, 477 U.S. at 488. However, petitioner would have had to exhaust that claim separately. *Id.* at 488-89. Petitioner did not do so in this case. Even if he had attempted to exhaust a claim of ineffective appellate counsel, he would have been unsuccessful because there is no constitutional right to counsel in a discretionary appeal to the Court of Appeals. *Oquendo*, 452 F. Supp. 2d at 369. In any event, his attorney's omission of an issue in the leave application may have been an attempt to focus the court's attention on petitioner's strongest claims. *See e.g. Jones v. Barnes*, 463 U.S. 745 (1983) (appellate counsel not ineffective for failing to raise every nonfrivolous issue requested by defendant).

[12] The actual innocence exception does not apply in this case. In any event, the court notes that, even though petitioner's counsel mentioned both the federal and state standards, petitioner's sufficiency of evidence claim was based exclusively upon his argument under New York State law, requiring the corroboration of accomplice testimony pursuant to N.Y. Crim. Proc. Law § 60.22. (Dkt. No. 7-7, Resp't's Ex. G, Pet'r's Br. at 14-18). Under federal law, an accomplice's testimony need not be corroborated to establish guilt. *United States v. Elusma*, 849 F.2d 76, 79 (2d Cir. 1988). Thus, any claim that the evidence in this case was insufficient because the accomplice's testimony was not properly corroborated would have not been cognizable in a federal habeas corpus petition and the claim would have been dismissed. *See Rivera v. Artus*, No. 08-CV-1782, 2010 WL 7506091, at *3 (E.D.N.Y. July 20, 2010) (accomplice corroboration claim not cognizable in federal habeas corpus action); *Arrington v. Bradt*, No. 9:08-CV–70, 2009 WL 909841, at *9 (N.D.N.Y. April 2, 2009) (same).

rejecting the offer of a mistrial. *People v. Denis*, 91 A.D.3d at 1302. Petitioner raised both claims in his application for leave to appeal to the Court of Appeals, properly exhausting each claim.

### A.  Procedural Default

The failure to object at trial when required is an independent and adequate state law ground for denial of a claim. *Simpson v. Portuondo*, No. 01 Civ. 1379, 2001 WL 830946, at *12 & n.39 (S.D.N.Y. July 12, 2001) (citing *inter alia* N.Y. Crim. Proc. Law § 470.05(2)).  In *Simpson*, the court found that under New York law, petitioner was required to raise his challenges to the prosecutor's alleged errors in summation by way of specific objections, and if those objections were sustained, was required to seek further relief. *Id.* at *11 & n.38 (citing *inter alia People v. Tardbania*, 72 N.Y.2d 852, 853 (1988); *People v. Dordal*, 55 N.Y.2d 954, 956 (1982); *People v. Medina*, 53 N.Y.2d 951, 953 (1981)).  In a footnote, the court cited *People v. Merchan*, 150 A.D.2d 730, 731 (2d Dep't), *lv. denied*, 74 N.Y.2d 815 (1989), in which the court held petitioner waived consideration of the prosecutorial misconduct claim where most of the improper remarks were not objected to, and when the intermittent objections were sustained, no further relief, curative instructions, or mistrial were requested so the court was deemed to have corrected the error to the defendant's satisfaction.

Based upon the New York law cited above, it is clear that the procedural default cited by the Appellate Division in this case is both firmly established and regularly followed.  The court did not use the default in an "exorbitant" manner because defense counsel specifically declined to accept the court's offer of a mistrial, after consulting

16

the petitioner. The procedural default was caused by defense counsel's actions, and petitioner claims now, as he did in the Appellate Division, that counsel's failure to accept the mistrial, rendered his assistance constitutionally ineffective. If counsel was ineffective in failing to accept the mistrial, it would be "cause" for the procedural default as well as an independent constitutional violation.

### B. Ineffective Counsel

#### 1. Exhaustion/Procedural Default

Respondent argues that petitioner failed to exhaust his claim of ineffective assistance of counsel because he failed to raise the claim in federal constitutional terms on direct appeal. Respondent further argues that petitioner may not return to state court to raise his federal constitutional argument because he has already raised the issue on appeal, and the state court will not entertain the issue in a motion to vacate pursuant to section 440.10.

Petitioner raised the argument that his attorney was ineffective in his appeal to the Appellate Division and in his application for leave to appeal to the New York Court of Appeals. In his Appellate Division brief, petitioner's counsel cited *People v. Baldi*, 54 N.Y.2d 137 (1981) as the standard for evaluating effective assistance of counsel. (Dkt. No. 7-7, Resp't's Ex. G at CM/ECF pp. 31-32). In *Cornell v. Kirkpatrick*, 665 F.3d 369, 375 (2d Cir. 2011), the Second Circuit held that citing only to *People v. Baldi*, did not evoke federal standards, in part, because it predated the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984), which established the federal constitutional standard for the review of an attorney's

effectiveness, and because the "mere mention of 'ineffective assistance of counsel' . . . without more was insufficient to alert the New York courts to the possible federal basis of that claim." *Cornell*, 665 F.3d at 376 (citing *Baldwin v. Reese*, 541 U.S. 27, 32-34 (2004)). A review of the prosecutor's Appellate Division brief shows that he relied only upon state law in responding to the petitioner's ineffective counsel claim. The Appellate Division's decision also appears to have been based upon the *Baldi* standard. Petitioner's application for leave to appeal did not cite any case law as the basis for his application. Thus, petitioner has failed to exhaust his state court remedies with respect to his ineffective counsel claim.

Petitioner may not return to state court to exhaust his claims because the Appellate Division has decided his claim on the merits, albeit under state law principles. A motion for reargument in the Appellate Division would not succeed, and petitioner has only has one chance to apply for leave to appeal to the New York Court of Appeals. *See Grey v. Hoke, supra.*; 22 N.Y.C.R.R. §§ 500.20, 600.8(b). The claim he is making is completely on the record, and thus, would not be appropriate in a motion to vacate under section 440.10. A trial court judge could dismiss the claim because the Appellate Division already decided the merits of his claim. *See* N.Y. Crim. Proc. Law § 440.10(2)(a). Or, the Appellate Division could interpret the federal nature of the ineffective assistance claim as a new claim that would have to be dismissed due to petitioner's unjustifiable failure to raise the record-based claim on appeal. *See* N.Y. Crim. Proc. Law § 440.10(2)(c). Both of these procedural bars are independent and adequate, and are consistently applied. *See Clark v. Perez*, 510 F.3d

at 393 (discussing § 440.10(2)(c)); *Grey v. Hoke*, 933 F.2d at 120-21 (discussing both sections).  Thus, petitioner is barred by a procedural default from bringing this claim in federal court.

Petitioner has shown neither cause nor prejudice for failing to raise his ineffective counsel claim in federal terms in state court.  Thus, the court may deny his claim based on the independent and adequate procedural default, and petitioner cannot show cause for his procedural default relative to his claim of prosecutorial misconduct. However, even if petitioner were not barred by his procedural default, the court would find that his claim fails on the merits.

## 2.    Legal Standard

The well-established standard for ineffective assistance of counsel was articulated in *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984).  This test requires an affirmative showing that counsel's performance fell below an objective standard of reasonableness and that prejudice resulted because there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. *See also Mickens v. Taylor*, 535 U.S. 162, 166 (2002).

In *Strickland*, the Supreme Court stated that "there are countless ways to provide effective assistance in a given case," and that "even the best criminal defense attorneys would not defend the particular client the same way." 466 U.S. at 689 (citation omitted).  When assessing counsel's performance, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." *Id.* Courts should not use hindsight to second-guess sound tactical decisions made by attorneys. *Id. See also Mason v. Scully*, 16 F.3d 38, 42 (2d Cir. 1994) (acts or omissions by counsel that may be considered sound trial strategy do not constitute ineffective assistance of counsel).

## 2. Application

In this case, the petitioner claims that the prosecutor made several improper remarks on summation, and the trial transcript shows that the trial judge agreed that many of the prosecutor's remarks, both on summation, and during the trial were more than inappropriate. (RA at 986-96). At one point during the summation, without being specific, the prosecutor alluded to the fact that the defendant had fled prior to trial and had been absent approximately four years. (RA at 987). The prosecutor stated that

> there's an old saying that justice delayed is justice denied. Justice was delayed by that man [indicating petitioner]. Time affects cases. Witnesses can leave, be no longer available. Memories fade. But the People's burden of proving beyond a reasonable doubt the defendant's guilt remains. The defendant knows that times –

(RA at 987). Defense counsel objected, and the court sustained the objection, telling the prosecutor that "[t]hese statements are totally out of line." (*Id.*) The court told the jury to disregard the statement. (*Id.*) When defense counsel then asked to approach the bench, the court had the jury taken out of the room so that the attorneys could discuss the issue with the court. (RA at 987-88).

The court then told the prosecutor that he was "putting icing on the cake," because his remarks were "very prejudicial," including his "appeals to community

safety," and his criticism of the extent of defense counsel's cross-examination of the investigator. (RA at 989). The court also told the prosecutor that his comments were inappropriate the day before the summation, during the trial itself. (RA at 989). The court criticized the prosecutor's reference to the fact that the petitioner was putting the investigators "on trial" by finding fault with their investigation. (*Id.*)

The prosecutor then stated:

> Judge, you have just exhorted me again, yesterday and today, about my bad conduct. What I'm saying is that I know a litle bit about trying cases. This is, I will say, the third time that I can recall in the course of a trial the Court has accused me of intentionally attempting to cause a mistrial or a reversal. It's the third time, Judge. . . . You told me yesterday I don't care about my job. That bothers me Judge, because I care greatly about my job. I'm trying to do my job to the best of my ability.

(RA at 990). The prosecutor argued that he was merely responding to what defense counsel stated during his summation. (RA at 991). The argument between the court and the prosecutor continued in that vein, and the prosecutor stated:

> I've never heard a judge say things such as "grossly improper" in the presence of the jury. The problem right now, what you're doing is – I'm seriously considering that there won't be an appral because with you challenging or saying things like that to me in the presence of the jury, using those types of qualifiers, that they obviously recognize that you're not personally happy with me and you haven't been on three – two prior trials.

(RA at 992). The court was clearly upset with the prosecutor's summation and his conduct during the course of the trial as well. The judge then criticized the prosecutor

for accusing the court of "throwing the trial . . . ." (RA at 993-94). The court then suggested that "[w]hy don't we just declare a mistrial and start all over? That's what we ought to maybe do." (RA at 994).

The court continued to insist that the best course would be to "start over." (*Id.*) However, the prosecutor pointed out that if a mistrial were declared either sua sponte by the court, or requested by the prosecutor without the defendant's consent, there would be no retrial because "if you declare a mistrial against that man, unless he asks for it, it's double jeopardy, barred." (RA at 99). The trial judge then turned to defense counsel and asked him whether he wanted to "start over." (RA at 995). The court took a recess so that defense counsel could consult with the petitioner and determine whether he would consent to a mistrial "so we don't have a double jeopardy issue." (*Id.*) After consulting with petitioner, defense counsel stated that "[w]e'd like to continue on, Judge." (*Id.*)

The Appellate Division did not act contrary to, nor did it unreasonably apply the *Strickland* standard when it rejected petitioner' claim on the merits. At trial, defense counsel was presented with a situation in which it was clear, perhaps even to the jury, that the court was disturbed by the prosecutor's conduct and may have even declared a mistrial sua sponte, after which the petitioner would not have been able to have been tried again due to a double jeopardy problem. Defense counsel could have believed that the prosecutor's case was weak, and his main witness was less than credible because he was receiving a substantial benefit for his testimony against the petitioner. There was also arguably little to corroborate Banks's testimony, which is a

requirement under New York law.  He could have determined that the weakness of the case, together with the judge's obvious hostility toward the prosecutor could have resulted in an acquittal.  He consulted with the petitioner prior to his decision, and petitioner never objected to the choice.

If counsel had moved for the mistrial himself, or consented to the mistrial, petitioner would simply have been tried again.  The prosecution still had an admissible incriminating statement from petitioner that would again be used against him in a new trial,[13] where the judge might not be so upset with the prosecutor, and petitioner's co-defendant Banks would presumably testify again.  A retrial would not necessarily benefit the petitioner.

Counsel's decision was a strategic choice that he could have reasonably made, given the facts in this case.  As stated above, courts presume that counsel's conduct falls within the wide range of reasonable professional assistance and will not second-guess sound tactical decisions made by attorneys. *See Harrington v. Richter*, __ U.S. __. __, 131 S. Ct. 770, 790 (2011) ("Although courts may not indulge 'post hoc rationalization' for counsel's decisionmaking that contradicts the available evidence of counsel's actions, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions.  There is a 'strong presumption' that counsel's attention to

---

[13] Petitioner's statement appears in the record at Dkt. No. 7-8, CM/ECF p. 23.  The petitioner told Investigator William Lefort that he did not know where he was the previous evening at 9:25 p.m.; he did not want to do (prison) time and was willing to do anything to not go back; that he could arrange for the purchase of a "kilo" from four people; that he did not have any "dope" at his address that morning, but that he had kept "weight" there in the past; and that someone owed him money for cocaine, but it was not $28,000.00.

certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect."') (internal citations omitted). The Appellate Division in this case did not unreasonably apply *Strickland* in determining that petitioner failed to show that counsel's decision was not strategic. Thus, petitioner's claim of ineffective counsel would also fail on the merits. Because the ineffective counsel claim would fail on the merits, he may not raise ineffective counsel as cause for his procedural default on the prosecutorial misconduct claim, and all of petitioner's claims may be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is further

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: August 26, 2013



**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**